IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

CONNIE E. CROSS

VS.                                    CIVIL ACTION NO. 1:07CV143-NBB-DAS

MICHAEL J. ASTRUE,
Commissioner of Social Security

## REPORT AND RECOMMENDATION

This case involves an application pursuant to 42 U.S.C. § 405(g) for judicial review of the

decision of the Commissioner of Social Security denying the applications of claimant Connie E.

Cross for a period of disability and disability insurance benefits.  The parties have not consented

to have a magistrate judge conduct all the proceedings in this case; therefore, the undersigned

submits this report and recommendation to the United States District Judge.

## I.  FACTUAL AND PROCEDURAL HISTORY

On June 10, 2002, the claimant filed an application for a period of disability and disability

insurance benefits, alleging an onset of disability as of May 31, 2002.  This application was

denied both initially and upon reconsideration, and the claimant timely requested and was

granted a hearing before an administrative law judge.  In a decision dated December 22, 2006 the

ALJ found that the claimant was not disabled.  The ALJ's decision rested as the final decision of

the Commissioner when the Appeals Council denied the claimant's request for review on August

28, 2007.  The ALJ's final decision is now ripe for review under section 205(g) of the Social

Security Act.  42 U.S.C. § 205(g).

The claimant was born on March 29, 1968 and was thirty-eight years old at the time of

the hearing before the ALJ. The claimant has a high school education and "some" college. She previously worked as a general clerk and a cashier. At the hearing, the claimant contended that because she had back problems, fibromyalgia, lupus, and depression, she was disabled and unable to work. Nevertheless, after a review and evaluation of the medical evidence of record and the subjective testimony, the ALJ found the claimant not disabled. Contrary to the claimant's claim of disability, the ALJ found that she had the residual functional capacity to perform jobs that exist in significant numbers in the national economy.

## II. DISCUSSION

In determining disability, the Commissioner, through the ALJ, works through a five-step sequential evaluation process.[1] The burden rests upon the claimant throughout the first four steps of this five-step process to prove disability, and if the claimant is successful in sustaining her burden at each of the first four levels then the burden shifts to the Commissioner at step five.[2] First, claimant must prove she is not currently engaged in substantial gainful activity.[3] Second, the claimant must prove her impairment is "severe" in that it "significantly limits her physical or mental ability to do basic work activities . . . ."[4] At step three the ALJ must conclude the claimant is disabled if she proves that his impairments meet or are medically equivalent to one of

---

[1]*See* 20 C.F.R. §§ 404.1520 (2008).

[2]*Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991).

[3]20 C.F.R. §§ 404.1520(b) (2008).

[4]20 C.F.R. §§ 404.1520(c) (2008).

the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1, §§ 1.00-114.02 (1998).[5]  Fourth,

the claimant bears the burden of proving she is incapable of meeting the physical and mental

demands of her past relevant work.[6]  If the claimant is successful at all four of the preceding steps

the burden shifts to the Commissioner to prove, considering claimant's residual functional

capacity, age, education and past work experience, that she is capable of performing other work.[7]

If the Commissioner proves other work exists which the claimant can perform, the claimant is

given the chance to prove that she cannot, in fact, perform that work.[8]

### III.  STANDARD OF REVIEW

This court's review of the Commissioner's decision is limited to an inquiry into whether

there is substantial evidence to support the findings of the Commissioner, *Richardson v. Perales*,

402 U.S. 389, 401 (1971), and whether the correct legal standards were applied.  42 U.S.C. §

405(g); *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994); *Villa v. Sullivan*, 895 F.2d 1019, 1021

(5th Cir. 1990).  Substantial evidence has been defined as "more than a mere scintilla.  It means

such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*Perales*, 402 U.S. at 401 (quoting *Consolidated Edison v. NLRB*, 305 U.S. 197, 229 (1938)).

The Fifth Circuit has further held that substantial evidence:

must do more than create a suspicion of the existence of the fact to be established,

_____

[5]20 C.F.R. §§ 404.1520(d) (2008). If a claimant's impairment meets certain criteria, that claimant's impairments are of such severity that they would prevent any person from performing substantial gainful activity.  20 C.F.R. §§ 404.1525 (2008).

[6]20 C.F.R. §§ 404.1520(e) (2008).

[7]20 C.F.R §§ 404.1520(f)(1) (2008).

[8]*Muse*, 925 F.2d at 789.

but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'

*Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)). Conflicts in the evidence are for the Commissioner to decide, and if substantial evidence is found to support the decision, the decision must be affirmed even if there is evidence on the other side. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The court may not reweigh the evidence, try the case de novo, or substitute its own judgment for that of the Commissioner. *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988), even if it finds that the evidence preponderates against the Commissioner's decision. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994); *Harrell*, 862 F.2d at 475. If the Commissioner's decision is supported by the evidence, then it is conclusive and must be upheld. *Paul v. Shalala*, 29 F.3d 208, 210 (5th Cir. 1994).

## IV. ANALYSIS

In the present case, the claimant makes three arguments: First, the claimant argues that the ALJ erred when he inappropriately substituted his opinion for that of the psychologists, Dr. Philip Drumheller and Dr. H. Patterson. Second, the claimant argues the ALJ erred when he rejected Dr. James Hensarling's diagnosis of fibromyalgia. And finally, the claimant argues the ALJ erred when he found there was other work the claimant could perform. The court will address each of these arguments in turn.

## 1. The opinions of Drs. Drumheller and Patterson

With her first argument, the claimant contends the ALJ erred when he inappropriately substituted his opinion for that of the psychologists, Dr. Philip Drumheller and Dr. H. Patterson.

Dr. Drumheller performed a consultative examination of the claimant on July 15, 2002 and made a provisional diagnosis of major depressive disorder. Dr. Drumheller also found that the claimant was mildly impaired in her ability to perform routine repetitive tasks and mildly to moderately impaired in her ability to interact with coworkers and receive supervision. Dr. Drumheller also found the claimant's concentration and attention was poor. The ALJ gave Dr. Drumheller's opinion little weight, holding specifically that Dr. Drumheller "indicated the claimant has gotten no substantially positive results from antidepressant medication, but the claimant sought no further treatment for depression after stopping her medication and had not been seen by her physician since April 18, 2002."

With respect to the ALJ's rejection of Dr. Drumheller's opinion, the claimant spends a great deal of time and effort arguing the ALJ substituted his opinion for that of the expert, but in support of this position, she points only to her use of antidepressants. That is, she points out that the ALJ was not precisely correct when he stated she sought no treatment after stopping her medication. Actually, she did start taking antidepressant medication again after the birth of her fourth child but quit after approximately four months when she saw no benefit. In addition, she points out she began again taking this type of medication three days prior to he visit with Dr. Drumheller. The court understands that the ALJ's statement may not have been precisely correct, but such a mistake does not lead to a finding that the ALJ substituted his opinion for that of the expert. While the claimant is correct that as a lay person, the ALJ is simply not qualified to make medical diagnoses, "[i]t is the ALJ's task to evaluate the medical opinions in light of other information contained in the record. *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995). An ALJ is justified in rejecting an opinion of any physician, in whole or in part, when the opinion

is contrary to the weight of the medical evidence.

In the present case, however, the ALJ gave Dr. Drumheller's opinion little weight because, as the he explained, "[t]he undersigned finds the limitations flowing from the claimant's diagnosed mental impairments as of the alleged disability onset date and through her date last insured, impacted primarily her ability to concentrate and maintain attention." There was no evidence that as of the alleged onset date and through her date last insured, the claimant's alleged mental health problems limited her activities of daily living. Because there was no evidence anywhere to support a debilitating mental condition during the relevant time period, the court finds substantial evidence to support the ALJ's decision as to this issue.

Next, in her April 17, 2006 examination with Dr. Patterson, the claimant stated she was no receiving mental health treatment. The ALJ also gave Dr. Patterson's opinion little weight. Dr. Patterson is a State agency psychologist who completed a Psychiatric Review Technique Form, and as the claimant points out, found her moderately limited in her ability to maintain concentration for extended periods; in her ability to complete a normal workday; and in her ability to respond appropriately to changes in a work setting. The claimant contends the ALJ erred when he found Dr. Patterson's opinion "inconsistent with the medical evidence as a whole" but failed to provide any objective evidence contrary to Dr. Patterson's findings. However, the court notes the ALJ explained he gave little weight to Dr. Patterson's opinion because "[t]he claimant was capable of essential normal activities of daily living during the relevant period, had no significant difficulties with social functioning and there is no evidence of repeated episodes of decompensation each of an extended duration." The court finds there is substantial evidence in the record to support this finding, largely found in the claimant's own testimony. As the ALJ

pointed out, the claimant "performed routine household chores, picked up after children, and did light cooking, shops and drives." The court also finds it important that while Dr. Patterson found the claimant moderately limited in three areas, the Psychiatric Review Technique Form actually provided twenty areas of examination. In the remaining seventeen areas, Dr. Patterson found the claimant either not significantly limited or no evidence of limitation at all.

In the end, it is clear there is substantial evidence to support the ALJ's determination as to the claimant's mental status based on the objective evidence, specifically the claimant's own testimony and that she has sought virtually no treatment for mental health problems. The court is aware that she has taken antidepressants on a few brief occasions, but this is not the type of mental health issue that would rise to a finding of disabled and justify an award of benefits. *See Bedford v. Astrue*, No. 06-50913, 2007 WL 1733132 at * 961 (5th Cir. June 15, 2007) (affirming finding of not disabled when only intermittent symptoms of depression and treatment); *Rodgriguez v. Apfel*, No. 95-50703, 1998 WL 127813 at *3 (5th Cir. March 5, 1998) (affirming finding of not disabled when depression "seldom affected ability to concentrate, persevere, or pace herself to complete tasks").

## 2. Fibromyalgia

With her second argument, the claimant contends the ALJ erred when he rejected Dr. James Hensarling's diagnosis of fibromyalgia. Specifically, the ALJ rejected the fibromyalgia diagnosis because Dr. Hensarling made it on June 23, 2003, approximately one year after the claimant's date last insured. Referring to the Fifth Circuit's decision in *Likes v. Callahan*, 112 F.3d 189, 190 (5th Cir. 1997), the claimant argues that such a finding was in error because the ALJ should have considered Dr. Hensarling's diagnosis in conjunction with Dr. Edmondson's

records made prior to the date last insured and reporting headaches, low back pain, joints hurting, difficulty sleeping, depression, and weakness.

In *Likes*, the Fifth Circuit reversed a decision where the ALJ found the claimant not disabled because the only diagnosis – in that case, post traumatic stress disorder – had been made after the date last insured. *Likes*, 112 F.3d at 190. The court explained that "retrospective medical diagnoses uncorroborated by contemporaneous medical reports but corroborated by lay evidence relating back to the claimed period of disability can support a finding of past impairment." *Id.* However, as the defendant points out in the present case, the facts surrounding the *Likes* decision are far different than those presented by Ms. Cross. In *Likes*, the claimant was a Vietnam veteran diagnosed in 1991 with post traumatic stress disorder. Such a disorder is almost by definition present since the event leading to the diagnosis, and indeed, three mental health professionals in *Jones v. Chater*, 65 F.3d 102, 103 (8th Cir. 1995) found implicitly that the claimant in that case suffered with symptoms of post traumatic stress disorder since he left Vietnam in 1968.[9] Moreover, the Fifth Circuit, looking to the Eighth Circuit's language, explained that "PTSD is an unstable condition that may not manifest itself until well after the stressful event which caused it, and may wax and wane after manifestation." *Likes*, 112 F.3d at 191 (quoting *Jones*, 65 F.3d at 103).

In the present case, the claimant contends she began suffering from fibromyalgia prior to her date last insured. In support of this, she can point only to the late diagnosis and reports dated prior to her date last insured and provided by Dr. Edmondson. After examining Dr.

---

[9]Making its decision in *Likes*, the Fifth Circuit relied almost entirely on the reasoning of *Jones v. Chater*, 65 F.3d 102 (8th Cir. 1995).

Edmondson's reports in detail, however, it is clear that during the approximately three-year period she saw Dr. Edmondson, her complaints were related almost exclusively to cold/flu-like symptoms or pain associated with her back problems. While there is one mention of joint pain and perhaps arthritis, the court does not believe that such scant evidence is the type evidence considered in the *Likes* decision that would be sufficient to find an implicit diagnosis or require an ALJ to investigate further into the matter. As the ALJ noted in his opinion, prior to her March 2003 visit to Dr. Hensarling, she had not seen him since February 2000, and while the claimant claimed to suffer "all over joint pain" in 2003, even Dr. Hensarling never opined that any of her alleged impairments would cause her to be unable to work. Accordingly, the court finds substantial evidence to support the ALJ's decision that the claimant's complaint of fibromyalgia does not warrant a finding of disabled.

### 3. Other Work

Finally, the claimant contends the ALJ erred when he found there was other work the claimant could perform. As discussed *supra*, in order for the commissioner to meet his burden of production at step five of the five-step sequential evaluation, he must show jobs consistent with the claimant's vocational profile that are available in significant numbers in the national economy, but the commissioner is not required to find jobs necessarily in the region the claimant resides. 20 C.F.R § 404.1520(f)(1) (2008)*; see also, Knott v. Califano*, 559 F.2d 279, 282 (5th Cir. 1977). In the present case, the ALJ found the claimant had the residual functional capacity to perform the jobs of telephone answering operator, information clerk, telemarketer, and surveillance system monitor. As the claimant points out, however, the first three of those listed are jobs are within the semi-skilled category, and the ALJ specifically found the claimant to be

unskilled.  The government responds pointing out that this does not dictate remand because surveillance system monitor falls within the unskilled category, and the vocational expert explained there were approximately 130,000 such jobs available in the national economy and 970 in Mississippi.  As a result, the court finds there was substantial evidence to support the ALJ's findings as to this issue.

## V. RECOMMENDATION

Based on the foregoing findings and conclusions, it is recommended that the commissioner's decision be affirmed and that the plaintiff's complaint be dismissed with prejudice.

The parties are referred to 28 U.S.C. §636(b)(1)(B) and Fed. R. Civ. P. 72(b) for the appropriate procedure in the event any party desires to file objections to these findings and recommendations.  Objections are required to be in writing and must be filed within ten (10) days of this date and "a party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within ten days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court . . . ."  *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (*en banc*) (citations omitted).

Respectfully submitted, this the 15th day of January 2009.

/s/ David A. Sanders
UNITED STATES MAGISTRATE JUDGE